UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| EDWARDO TORRES § | |
|    Plaintiff § | |
| § | |
| vs. § | CIVIL ACTION NO. C-09-073 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
|    Defendant § | |

## MEMORANDUM AND RECOMMENDATION

Edwardo Torres filed a complaint seeking reversal of the decision of the defendant Commissioner of Social Security ("Commissioner") for the purpose of receiving Supplemental Security Income ("SSI"). Proceeding *pro se*, plaintiff filed a brief in support of his application on December 7, 2009 (D.E. 9). Defendant filed a response to the brief on February 12, 2010 (D.E. 12). Plaintiff filed a reply brief on April 28, 2010 (D.E. 15).

### BACKGROUND

Plaintiff filed his application on May 24, 2005 and it was denied at all administrative levels (Tr. 68-70, 62-67, 10-20, 4-6). Plaintiff alleges an inability to work because of schizoaffective disorder and other mood disorders, and sprains and strains of all types, including low back (Tr. 21-22). His reported symptoms include being nervous and frustrated, hearing voices, trouble sleeping and concentrating, and bad headaches (Tr. 81-82). Prior to the onset of his disability, plaintiff worked as a laborer and a concession stand worker (Tr. 82).

**MEDICAL EVIDENCE**

Plaintiff was evaluated for seizures in May 1999. It was noted that he had a history of alcohol abuse and dependence and had gone through treatment in July 1998. He complained of increased anger, nightmares and flashbacks in the previous two months. He stated that he was talking to his wife, blacked out and threw her against a wall. When she screamed he woke up. An electroencephalogram was ordered to rule out seizure focus. The EEG was normal, but did not rule out epilepsy (Tr. 140-141).

Plaintiff was seen in a Veterans Administration ("VA") hospital in August 1999. He said he had not consumed alcohol in the previous six months but had past and current marijuana use. He complained of depression, suicidal ideation, poor sleep secondary to nightmares, seeing shadows when trying to fall asleep and hearing his name being called (Tr. 132). He had acquired a rope with which to hang himself, but his wife stopped him. He had a long history of depression, alcoholism, irritability and temper outburst (Id.). He was scheduled for hearing on a Driving While Intoxicated ("DWI") charge (Id.). His examination was essentially normal (Tr. 133). His mood improved over the course of his stay in the hospital (Tr. 133-134). He was diagnosed with substance-induced mood disorder, depression; alcohol dependence/abuse (short remission); marijuana abuse; impulse control disorder, not otherwise specified. He had a GAF on admission of 45 and 65 at discharge.[1]

---

[1] The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF of 61-70 indicates some mild

Plaintiff was seen at the Nueces County MHMR center in November 2003. He was complaining of anxiety, hearing voices, insomnia and memory loss (Tr. 212). The examination showed he was anxious and depressed. His speech was goal-oriented. He was hearing voices. His thought process was tangential and circumstantial and his thought content was paranoid and preoccupied. He was alert and oriented times three and his memory was intact. He showed poor concentration. His abstract thinking, and fund of information and intelligence were okay. His impulse control was poor and his judgment, insight and reliability were fair. He was diagnosed with schizoaffective disorder and depression and his GAF was 40,[2] both currently and during the past year (Tr. 215-216). He was prescribed Paxil CR, Buspar and Seroquel (Tr. 220).

In December 2003 plaintiff reported significant improvement. He was less depressed, was sleeping better and only occasionally heard his name being called (Tr. 209). His Paxil dosage was increased and he continued with the Buspar and Seroquel (Tr. 211). In February 2004 plaintiff complained of insomnia and hearing voices. He had tested positive for

---

symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., p. 34.

[2]A GAF of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work, school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home and is failing at school).

cocaine use when he reported for parole. His GAF was 40 (Tr. 205). He was prescribed Trazodone in addition to the medications he was taking (Tr. 207).

In September 2004 plaintiff complained of being depressed. His symptoms included anger, hallucinations, substance abuse, anxiety, aggression, depression and impulsivity. He was not taking any medication (Tr. 197). His level of comprehension was described as medium and his motivational level was low (Tr. 202).

Plaintiff complained of hearing voices in October 2004. He said he had been sober "for a while" and had not used marijuana or cocaine for months (Tr. 188). His thinking was concrete. His fund of information and intelligence, judgment and insight and reliability were fair. His impulse control was poor. His current GAF was 40 and his GAF for the past year was 45 (Tr. 188-190).

In January 2005 it was noted that plaintiff had missed a previous appointment and run out of medication. He stated that while he was on his medication he was doing well and not hearing as many voices (Tr. 164). His GAF was 40 (Tr. 165).

In March 2005 plaintiff complained of depression and mood swings (Tr. 268). He had failed to keep some of his appointments and he had indicated he was going to seek mental health services from the VA. For those reasons, plaintiff was discharged from care at MHMR (Tr. 268).

In July 2005 plaintiff was seen at the VA. His chief complaint was that he had slipped off his porch two months previously and fractured his lower leg, which was placed

4

in a soft cast and a boot.  He also asked for a psychiatric appointment, stating that he occasionally heard voices (Tr. 149).  He reported that he drank on weekends (Tr. 147).

Plaintiff saw Rene Rodriguez, M.D., for an internal medicine consultation on September 5, 2005.  He reported that five years earlier he had been involved in a motorcycle accident resulting in a compound fracture of his right femur.  He had constant pain since the accident.  He also reported fracturing his right ankle four months earlier.  He was complaining of chronic pain in his low back and right ankle, aggravated by weather changes (Tr. 221).  His examination was essentially normal, except for his right leg.  There was a long surgical scar on the lateral aspect of his right thigh and evidence of swelling and pain on passive range of motion of the right ankle.  He could not walk on heels and toes and could not squat or do tandem walking due to pain in his right ankle.  He described his pain as a "5" on a scale of one to 10 (Tr. 222).  He was diagnosed with low back sprain with chronic pain (Tr. 222).

In medical records from the Texas Department of Criminal Justice–Institutional Division ("TDCJ-ID"), it was noted in May 2006 that plaintiff had acute hepatitis C (Tr. 341-342, 349).  In August 2006 plaintiff stated that he had a history of mental intervention and was diagnosed with post-traumatic stress disorder ("PTSD").  He said he was not prescribed any medications and that his symptoms were flashbacks, which he had not experienced for a while.  He stated that he was feeling fine and did not need mental health intervention (Tr. 355).  His mental status examination showed no apparent mental health needs (Tr. 356).

5

## HEARING TESTIMONY

At the hearing held on September 27, 2007, plaintiff's attorney reported that plaintiff was in jail and was not expected to be released until 2008. The ALJ said plaintiff would be rescheduled in 2008 (Tr. 376).

The ALJ issued an unfavorable decision in plaintiff's case on March 25, 2008. It is noted in the decision that plaintiff knowingly and voluntarily waived his right to personally appear and testify at a hearing (Tr. 13).

## LEGAL STANDARDS

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The burden has been described as more than a scintilla, but lower than a preponderance. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" Johnson v. Bowen, 864 F.2d 340, 344 (5th Cir. 1988)(citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. But the Court does not reweigh the evidence,

try the issues de novo or substitute its judgment for that of the Commissioner. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)(citations omitted). It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others who have observed him and (4) the claimant's age, education and work history. Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)(citations omitted).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. Martinez v. Chater, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520. The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

## DISCUSSION

In the opinion issued on March 25, 2008, the ALJ found that plaintiff had not engaged in substantial gainful activity since his application date of May 24, 2005. He further found that plaintiff had severe impairments, namely, schizoaffective disorder, depression and a low back sprain, but did not have an impairment or combination of

impairments that met or medically equaled a listed impairment. The ALJ next determined that plaintiff had the residual functional capacity to perform medium work[3], except that he is markedly limited[4] in his ability to understand, remember and carry out detailed instructions and moderately limited[5] in his ability (1) to maintain attention and concentration for extended periods; (2) to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (3) to sustain an ordinary routine without special supervision; (4) to complete a normal work day and work week without interruptions from psychologically-based symptoms; (5) to perform at a consistent pace without an unreasonable number and length of rest periods; (6) to accept instructions and (7) to set realistic goals or make plans independently of others. The ALJ then found that plaintiff had no past relevant work. Based on the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 ("Grids"), the ALJ found that plaintiff was not disabled because he could do all, or substantially all, of the exertional demands of medium work and was not limited by his nonexertional impairments. Accordingly, the ALJ found that plaintiff could do unskilled medium work and therefore was not disabled (Tr. 10-20).

---

[3]"Medium" work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

[4]"Marked" is more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with an individual's ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 C.

[5]"Moderate" means there is more than a slight limitation in this area but the individual is still able to function satisfactorily (Tr. 17).

Plaintiff objects to these findings and argues that the ALJ erred as a matter of law when he used the Grids at Step 5 instead of seeking specific vocational testimony. Defendant responds that it was proper for the ALJ to use the Grids to find plaintiff disabled.

### A. Use of the Grids

The Grids reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone. The Grids provide an analysis of the various vocational factors such as age, education and work experience in combination with the individual's residual functional capacity for work in evaluating the individual's ability to engage in substantial gainful activity. Where findings of fact coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 200.00.

The use of the Grids is predicated on an individual having an impairment which manifests itself by limitations in meeting the strength requirements for a job. The Grids may not be fully applicable where the nature of an individual's impairment is nonexertional, such as when a plaintiff has certain mental, sensory or skin impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).[6] The Fifth Circuit has held that use of the grids is appropriate

---

[6][W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this appendix 2, full consideration must be given to

when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity. Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)(citing Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987); Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir. 1999); Carry v. Heckler, 750 F.2d 479, 484, n. 9 (5th Cir. 1985)(citing Parris v. Heckler, 733 F.2d 324, 326 (4th Cir. 1984)). When a nonexertional factor limits the range of jobs a claimant can perform, the ALJ must rely on vocational expert testimony to establish that jobs exist. Scott v. Shalala, 30 F.3d 33, 35 (5th Cir. 1994). See also See Bolton v. Callahan, 984 F.Supp. 510, 514 (N.D. Tex. 1997) and Frazier v. Chater, 903 F.Supp. 1030, 1034 (N.D. Tex. 1995). See also See Bolton v. Callahan, 984 F.Supp. 510, 514 (N.D. Tex. 1997) and Frazier v. Chater, 903 F.Supp. 1030, 1034 (N.D. Tex. 1995).

The ALJ in this case found that plaintiff's schizoaffective disorder was a severe impairment, which, under the regulations, means that he found it significantly limits the plaintiff's ability to do basic work activities. 20 C.F.R. §§ 416.920(c), 404.1520a(d). Specifically, the ALJ found that plaintiff had a markedly limited ability to understand, remember and carry out detailed instructions and moderately limited abilities in several other areas of mental functioning (Tr. 16). Accordingly, the Grids are not fully applicable in plaintiff's case.

---

all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2).

Nevertheless, if an ALJ determines that a claimant has a significant nonexertional limitation, the Grids may be used a "framework" to guide the ALJ's decision. 20 C.F.R. § 404.1569a(2)(d). However, it is unclear how the "framework" concept is to be applied. See discussion, Allsbury v. Barnhart, 460 F.Supp.2d 717, 722-725 (E.D. Tex. 2006). The district court in Allsbury looked to Social Security Ruling 83-14 and found that the adjudicator should (1) consider the requirements of jobs which the claimant might perform with strength limitations; (2) determine whether the claimant's nonexertional limitations affect performance of these jobs and, if so (3) determine to what extent the available "occupational base" is eroded by the nonexertional limitations. Allsbury, 460 F.Supp.2d at 723 (citing Social Security Ruling 83-14 (1983), 1983 WL 31254 (S.S.A.) at *6). The ALJ in this case found that plaintiff's nonexertional limitations would affect performance of the medium strength jobs, but then did not determine to what extent the occupational base was eroded by the limitations. Therefore, he did not properly use the "framework" to arrive at his decision.

The Fifth Circuit has not ruled specifically on how to apply the "framework" concept to cases involving exertional and nonexertional impairments, but it has emphasized that an ALJ may rely on the Grids only when the evidentiary underpinnings coincide exactly with the evidence of disability in the record. Lawler v. Heckler, 761 F.2d 195, 197 (5th Cir. 1985)(citing Dellolio v. Heckler, 705 F.2d 123, 127 (5th Cir. 1983) and Thomas v. Schweiker, 666 F.2d 999, 1004 (5th Cir. 1982)). The Lawler court remanded the case for the purpose of obtaining VE testimony regarding whether a claimant who alleged disabling

11

pain could meet the requirements of sedentary work. The court also directed the Commissioner to consider the effect of plaintiff's mental impairment on the availability of jobs she could do. Id. at 198 and n. 2.

The ALJ in this case found that plaintiff had a mental impairment which had a significant impact on his ability to do work-related activities. Under the regulations and relevant case law, he should not have relied on the Grids but should have consulted a vocational expert or sought other vocational evidence. Scott, 33 F.3d at 35. Because he did not do so, it is recommended that the decision of the Commissioner be vacated and plaintiff's case be remanded so that the Commissioner can seek additional evidence.

### B. Waiver of Hearing

Defendant argues that because plaintiff waived his right to a hearing, he also waived his right to have a vocational expert testify. The regulations provide that if a party does not wish to appear before the ALJ at an oral hearing, the ALJ shall make a record of the material evidence, including the applications, written statements, certificates, reports, affidavits and other documents used in making the determination under review. 20 C.F.R. § 404.948. In addition, the regulations provide that if the issue in a disability determination is whether a claimant's work skills can be used in other work and the specific occupations in which they can be used, a vocational expert may be used. 20 C.F.R. § 404.1566(e). Nothing in the regulations indicates that by waiving his right to a hearing a plaintiff also waives his right to have the ALJ seek a written statement or other evidence from a vocational expert if the information is deemed necessary. Defendant's argument to the contrary is without merit.

## **RECOMMENDATION**

The Commissioner's determination that plaintiff is not disabled is not supported by substantial evidence.  It is respectfully recommended that the Commissioner's determination that plaintiff is not disabled be vacated, and that plaintiff's case be remanded to the Social Security Administration so that vocational evidence can be obtained regarding the occupational base available to plaintiff.  This recommendation for remand is made pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Respectfully submitted this 3rd day of May, 2010.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** of receipt of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)-(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996)(en banc).